**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**STEPHANIE L.,**

      **Plaintiff,**

                                **Case No. 3:19-cv-20360**

    **v.**                           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Stephanie L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On December 4, 2015, Plaintiff filed an application for benefits, alleging that she has been disabled since November 26, 2014. R. 86, 99, 172–75. The application was denied initially and upon reconsideration. R. 102–06, 108–14. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 115−16. Administrative Law Judge ("ALJ") Kenneth Ayers held a

hearing on June 8, 2018, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 33−76. In a decision dated October 17, 2018, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from November 26,

2014, the alleged disability onset date, through the date of that decision. R. 18−28. That decision

became the final decision of the Commissioner of Social Security when the Appeals Council

declined review on September 19, 2019. R. 1−6. Plaintiff timely filed this appeal pursuant to 42

U.S.C. § 405(g). ECF No. 1. On November 12, 2020, Plaintiff consented to disposition of the

matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 12.[2] On November 13, 2020, the case was reassigned

to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 43 years old on her alleged disability onset date. R. 27. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. R. 20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 26, 2014, her alleged disability onset date, and the date of the decision. R. 20.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression disorder, generalized anxiety disorder, fibromyalgia, internal derangement of the bilateral hip joints and left shoulder, migraines, bilateral carpal tunnel syndrome, and restless leg syndrome. R. 21. The ALJ also found Plaintiff's diagnosed high cholesterol and body mass index indicative of obesity were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–23.

At step four, the ALJ found that Plaintiff had the RFC to perform less than a full range of light work subject to various additional limitations. R. 23–27. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a teacher's aide. R. 27.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 4,200 jobs as a data entry clerical assistant and approximately 22,304 jobs as a photocopy machine operator—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 26, 2014, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Brief,* ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

## IV.    DISCUSSION

### A.    Step Three

Plaintiff challenges the ALJ's finding at step three of the sequential evaluation that

Plaintiff's orthopedic impairments, fibromyalgia, and mental impairments neither meet nor

medically equal a listed impairment. *Plaintiff's Brief*, ECF No. 15, pp. 3–6. Plaintiff's challenges

are not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically

determinable impairments meets or equals the severity of any of the impairments in the Listing

of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it

satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those

criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits

under the 'equivalence' step by showing that the *overall* functional impact of his unlisted

impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*,

493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are

set] at a higher level of severity than the statutory standard" because the "listings define

impairments that would prevent an adult, regardless of his age, education, or work experience,

from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis

in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular

language" when determining whether a claimant meets a listing, the ALJ's discussion must

provide for "meaningful review" of the ALJ's determination. *Jones*, 364 F.3d at 505 (citing

*Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that

the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not

meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

### 1.    Musculoskeletal Impairments

Plaintiff argues that the ALJ "was incorrect in his determination that her orthopedic diagnoses do not meet the criteria of a severe listed impairment as set forth in the relevant guidelines, primarily guideline 1.04, Disorders of the Spine; 1.00(B)(2)(c), fine and gross movements[.]" *Plaintiff's Brief*, ECF No. 15, p. 2; *see also id.* at 3, 5. This Court disagrees.

Listing 1.04 addresses disorders of the spine and Listing 1.00B2c addresses musculoskeletal system and loss of function to effectively perform fine and gross movements. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2c, 1.04 (eff. May 22, 2018 to Sept. 23, 2019). To meet these Listings, a claimant must demonstrate the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* at § 1.04.

> 1.0   Musculoskeletal System . . .
>
> B. Loss of function. . . .
>
> 2. How We Define Loss of Function in These Listings . . .
>
> c. What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Id.* at § 1.00B2c.

Here, the ALJ determined at step three of the sequential evaluation that Plaintiff's orthopedic impairments, or combination of impairments, did not meet or medically equal a listed impairment, reasoning as follows:

> The record fails to establish that the claimant had an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment. The medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment. Furthermore, no treating or examining medical source has mentioned findings or rendered an opinion that the claimant's impairments medically equaled the criteria of any listed impairment. In making this determination, specific consideration was given to listings 1.02 Major Dysfunction of a Joint and 1.04 Disorders of the Spine; however, the record is absent evidence [sic] of nerve root compression, spinal arachnoiditis, pseudoclaudication, or an inability to ambulate effectively or perform fine/gross movements effectively within the meaning of 1.00B2b and 1.00B2c. The criteria of listing 11.14 Peripheral Neuropathy are not met because there is no documentation of extreme limitations in the ability to stand up from a seated position, balance while standing/walking, or use the upper extremities. In assessing the claimant's diagnosis, the undersigned has also considered SSR 12-2p

Evaluation of Fibromyalgia[3] and find that her diagnosis of fibromyalgia is adequately supported by the medical evidence.

R. 21. The Court finds no error in the ALJ's reasoning in this regard and finds that substantial evidence supports the ALJ's determination at step three as to Listings 1.00B2c and 1.04. Specifically, in considering whether Plaintiff meets or medically equals any listing, the ALJ expressly stated that he considered the appropriate parts of Listing 1.00, including Listing 1.02, 1.04, 1.00B2b, and 1.00B2c, and, when determining Plaintiff's RFC, the ALJ engaged in a comprehensive review of the medical evidence relevant to Listings 1.00B2c and 1.04, detailing years of medical records and hearing testimony as outlined later in this decision. R. 24–27.

Plaintiff nevertheless challenges these findings as they relate to Listing 1.04 and Listing 1.00B2c, which the Court addresses in turn.

### a.   Listing 1.04

Plaintiff complains that evidence in the record establishes that she can "meet, or exceed, the listed criteria necessary at 1.04," asserting as follows:

> It is clear that the claimant's spinal issues have been extant for some time. The initial Disability Determination Explanation, Document 7-3, page 77, clearly indicates that the evaluator clearly believed the claimant had a "severe" spinal impairment and a "severe" fibromyalgia impairment, *Id* at 81. That initial finding also indicated that Ms. L[.] had exertional limitations of pulling, and limitations on walking and sitting. Postural limitations precluded her from climbing stairs or ladders except occasionally. Indeed, the history of the claimant's spinal diagnoses is confirmed by an initial Lumbar MRI on April 30, 2013, see document 7-9, page 705. There is clearly involvement of the nerve roots at the levels T10/11, T11/12, L1/2, L3/4 and L4/5. There are also findings of degenerative disc disease throughout the lumbar spine. A repeat Lumbar MRI performed on October 7, 2015 shows additional or worsening findings at T10/11, and T11/12, Id. at 696. Most recently, a Lumbar MRI performed on May 18, 2018 shows advancing pathology at L1/2 and L3/4. Her pain management record[s] reflect that she could not sit nor stand for more than 10 minutes serially, see document 7-8 at page 443. It is submitted that these findings meet, or exceed, the listed criteria necessary at 1.04,

---

[3] Plaintiff's challenges to the ALJ's finding regarding fibromyalgia are addressed later in this decision.

> *Disorders of the Spine*. There are numerous findings of herniated nucleus pulposus, spinal stenosis, and/or degenerative disc disease; with nerve root compression. Ms. L[.] has consistent findings of pain and complaints of radicular pain of the lower extremities as confirmed by the treatment and notes of her physicians.

*Plaintiff's Brief*, ECF No. 15, p. 3.

Plaintiff's arguments are not well taken for a number of reasons. As a preliminary matter, a finding that an impairment is severe does not establish that the impairment, or combination of impairments, meets or medically equals a listed impairment at step three. *Cf. Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005) ("The burden imposed on a claimant at step three is a far more exacting standard than step two's threshold (used to prevent frivolous claims), which requires that a claimant show that she suffers from a 'severe' impairment."). Moreover, the ALJ assigned "significant weight" to the opinions of the state agency reviewing physician upon whom Plaintiff relies, Ibrahim Housri, M.D., R. 25, and specifically accommodated that physician's opined limitations on Plaintiff's ability to pull, walk, and sit. *Compare* R. 83 (reflecting state agency opined limitations of, *inter alia*, that Plaintiff can occasionally lift and/or carry (including upward pulling) 20 pounds and frequently lift and/or carry 10 pounds; unlimited ability to push and/or pull other than for lift and/or carry; stand and/or walk for a total of 4 hours; sit for about 6 hours in an 8-hour workday), *with* R. 23 (reflecting RFC providing, *inter alia*, that "[s]he can lift/carry and push/pull up to 20 pounds occasionally and up to 10 pounds frequently. During an eight-hour workday, she can sit for six hours, stand for four hours and walk for four hours").

Plaintiff also cites to MRI findings to support her step three argument regarding Listing 1.04. *Plaintiff's Brief*, ECF No. 15, p. 3. However, Plaintiff's assertion that "[t]here is clearly involvement of the nerve roots at the levels T10/11, T11/12, L1/2, L3/4 and L4/5" appears to be her own lay interpretation of the evidence rather than an objective finding. *See id.* (apparently

12

citing R. 705 in support of this assertion); *see also* R. 705 (reflecting no statement that there was "involvement of the nerve roots" at any level). In any event, the ALJ expressly considered this diagnostic evidence when finding that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 25 ("Although diagnostic imaging performed in April 2013, October 2015, and May 2018 indicated multilevel lumbar herniations with cord compression and facet hypertrophy, an April 2014 MRI indicated a cervical disc bulge without nerve root involvement or stenosis . . . [and] a left shoulder MRI performed in November 2014 revealed only minimal left shoulder degenerative disease and July 2016 hip x-rays revealed only trace/minimal degenerative joint disease[.]"). The Court therefore rejects Plaintiff's request to reweigh this evidence. *Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff further contends that "[h]er pain management record[s] reflect that she could not sit nor stand for more than 10 minutes serially, see document 7-8 at page 443." *Plaintiff's Brief*, ECF No. 15, p. 3. However, the record to which Plaintiff refers merely reflects Plaintiff's subjective complaints to the examining physician's assistant. R. 443 ("ACTIVITIES: Most likely sitting 10 minutes and stand 10 minutes. Never lies down. Uses no assistive device. She has difficulty performing chores, doing shopping, participating in recreational activities, and exercising."). The mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir.

1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted).

Plaintiff goes on to contend that "[t]here are numerous findings of herniated nucleus pulposus, spinal stenosis, and/or degenerative disc disease; with nerve root compression[,]" but provides no citation to the record for this assertion. *See Plaintiff's Brief*, ECF No. 15, p. 3. Notably, as the ALJ observed, "the record is absent [sic] of evidence of nerve root compression[.]" R. 21; *see also* R. 466 (reflecting EMG/NCV report dated April 15, 2016, reflecting "[t]his electrodiagnostic study of the lower extremities is normal. There is no electrophysiologic evidence of lumbar nerve root dysfunction, entrapment neuropathy or peripheral neuropathy on today's study"), 471 (reflecting EMG/NCV report dated April 8, 2016, reflecting, *inter alia*, "[t]here is no electrophysiologic evidence of superimposed cervical nerve root dysfunction"), 486 (reflecting chart notes from June 25, 2015, that "patient has LBP that is non-radicular, suggesting facet joint origin supported by absence of nerve root compression documented on the medical record on H&P and radiographic evaluation"). Moreover, even if the record does contain the evidence of Plaintiff's claimed conditions, the Court must "uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When

14

'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

To the extent that Plaintiff relies on her own subjective complaints of pain to support her argument that she meets or medically equals Listing 1.04, *Plaintiff's Brief*, ECF No. 15, p. 3, the ALJ reasonably discounted those complaints for the reasons explained later in this decision.

The Court also understands Plaintiff to advance additional argument based on her "gait abnormalities" and the ALJ's alleged failure to properly assess the opinions of Plaintiff's treating physicians. *Id*. at 5−6. Although Plaintiff does not specifically explain which Listing she intends to support by advancing this argument, the Court presumes that she advances it in support of her arguments regarding Listing 1.04. *See id*. Plaintiff's argument in this regard is as follows:

> Judge Ayers also incorrectly discounted the gait abnormalities of the physical therapist, (document 7-7 at page 54) see his decision at document 7-2 at page 25; although they are a recognized medical provider, and the findings are consistent with the diagnosis and guideline criteria. The only reason he provides is that these findings are inconsistent with other records. He discounted the disability recommendations of the treating physicians, see document 7-2 at page 26, with no other basis than they were "vague" or the determination of disability is up to the Commissioner. Although it is the Commissioner's purview to determine disability for Social Security purposes, the treating physicians are unique in their long-term familiarity with the claimant and their ability to determine her deteriorating physical condition over time. Certainly, the records of these physicians are significant, and their conclusions cannot be dismissed out of hand.

*Id*.

Plaintiff's argument is not well taken. As a preliminary matter, it is not clear on what page in the record Plaintiff intends to rely by citing "document 7-7 at page 54[,]" *id*., and the

15

ALJ does not assess abnormal gait findings by a physical therapist on R. 25. For example, R. 54 is part of ECF No. 7-2, which is part of the administrative hearing transcript. To the extent that Plaintiff may intend to refer to R. 334, which falls on page 54 of ECF No. 7-7, that record does not contain evidence of gait abnormalities.

In any event, the ALJ specifically considered at step four Plaintiff's ability to walk without the use of an assistive device and any gait abnormalities, which he accommodated when crafting the RFC. R. 24–26. Notably, Plaintiff has not explained how any abnormality in her gait established that she met the criteria of Listing 1.04, particularly where the record reflects her ability to walk despite any gait abnormality. *See id.*; *see also Plaintiff's Brief*, ECF No. 15, pp. 5–6. The Court will not construct Plaintiff's arguments for her. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

Finally, Plaintiff's contention that the ALJ improperly discounted "the disability recommendations of the treating physicians" is similarly unavailing. *Plaintiff's Brief*, ECF No. 15, p. 6. In assigning "limited weight" to the treating physicians on the page cited by Plaintiff, R.25, the ALJ reasoned as follows:

> While various treating sources, including Glenn Babus M.D., Harleen Kaur M.D., and Maryann Lee M.D., concluded that the claimant was incapacitated from working as of May 2015, June 2015, September 2015, and October 2015, examiners who assessed the claimant for disability retirement purposes including D. Kunstadt M.D. found that she was not disabled as of November 2015 and December 2015 (Exhibits 1F/1, 3, 12, and 16, 3F/5, 10, 16, and 32).
>
> Nevertheless, the undersigned accords these disability determinations limited

weight as they are vague and concern an issue reserved to the commissioner.

R. 25. In attacking this finding, Plaintiff simply offers conclusory assertions with no citation to the record or authority to support her position. *Plaintiff's Brief*, ECF No. 15, p. 6 (arguing generally that "treating physicians are unique in their long-term familiarity with the claimant and their ability to determine her deteriorating physical condition over time. Certainly, the records of these physicians are significant, and their conclusions cannot be dismissed out of hand"). Notably, Plaintiff does not explain how the ALJ erred when discounting these physicians' opinions that Plaintiff "was incapacitated from working" during certain periods of time, which the ALJ properly found was an issue reserved to the Commissioner. *See id.*; *see also* R. 25; *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

For all these reasons, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or medically equal Listing 1.04.

### b.    Listing 1.00B2c

In challenging the ALJ's step three finding that her impairments do not meet or medically equal Listing 1.00B2c, Plaintiff argues as follows:

> Her orthopedic and fibromyalgia in and of themselves, when coupled together, are restrictive. In addition, Ms. L[.] has confirmed carpal tunnel syndrome, which was confirmed by objective medical testing by Healthcare Associates in Medicine through EMG/NCV testing on April 8, 2016, see document 7-8 at page 471. On May 9, 2016 it is noted she has "growing numbness in the arms and hands," *Ibid*. Her records reflect ongoing trouble with standing, crouching and kneeling. Of

17

significance, the doctor found numbness, stiffness, and tingling in hands, and that the claimant reported she drops things frequently, see document 7-8 at page 545. The physical therapy notes confirm the claimant's frequent issues with hand and grip strength, see Document 7-7 at page 379. It is submitted that this meets the criteria set out in guideline 1.00(B)(2)(c), fine and gross movements.

*Plaintiff's Brief*, ECF No. 15, p. 5.

Plaintiff's arguments are not well taken. As an initial matter, the ALJ explicitly stated that he considered Plaintiff's impairments in combination at step three when finding that Plaintiff did not meet or medically a listed impairment. R. 21. "An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec. Admin.*, No. 13-0781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec. Admin.*, 268 F. App'x 186, 189 (3d Cir. 2008)); *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so.") (quoting *Morrison ex. rel. Morrison*, 268 F. App'x at 189).

Plaintiff points to her "confirmed carpal tunnel syndrome" and evidence that she experienced numbness in her arms and hands to support her argument that she has satisfied the criteria of Listing 1.00B2c. *Plaintiff's Brief*, ECF No. 15, p. 5. However, as previously discussed, the ALJ found at step two that Plaintiff's bilateral carpal tunnel syndrome was a severe impairment, R. 21, but went on to observe at step four that "[t]he record does not document findings of extremity sensation deficits, hand/finger dexterity issues, or grip strength," R. 24–25 (citing records that, *inter alia*, reveal no neurological deficits).

Plaintiff also contends that "[h]er records reflect ongoing trouble with standing, crouching and kneeling." *Plaintiff's Brief*, ECF No. 15, p. 5. However, Plaintiff provides no

citation to the record for this assertion. *See id.* Notably, the ALJ specifically considered at step four that Dr. Housri, the state agency reviewing physician upon whom Plaintiff previously relied to support her argument that she satisfied the criteria of Listing 1.04, found that Plaintiff was able to perform light work involving, *inter alia*, four hours of standing as well as occasional crouching and frequent kneeling. R. 25.

Plaintiff further contends that she "reported that she drops things frequently," as memorialized in the record at R. 545. *Plaintiff's Brief*, ECF No. 15, p. 5. However, as previously discussed, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879); *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7.

Finally, Plaintiff asserts that "[t]he physical therapy notes confirm the claimant's frequent issues with hand and grip strength, see Document 7-7 at page 379." *Plaintiff's Brief*, ECF No. 15, p. 5. However, Plaintiff does not explain how her vague reference to "frequent issues with hand and grip strength" establishes that she meets the criteria of Listing 1.00B2c. *See id.* Moreover, it is not apparent to the Court how the cited evidence, R. 379, supports Plaintiff's assertion of "frequent issues with hand and grip strength;" that record simply documents physical therapy exercises performed by Plaintiff and objective observations of Plaintiff's posture, palpation, and gait. *See id*.

In short, substantial evidence supports the ALJ's finding that Plaintiff's impairments, whether considered singly or in combination, neither meet nor medically equal Listing 1.00B2c.

## 2.    Fibromyalgia

Plaintiff also challenges the ALJ's finding at step three that her fibromyalgia does not render her disabled. *Plaintiff's Brief*, ECF No. 15, pp. 3−5. Fibromyalgia "is a complex medical

condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"),[4] or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria").[5] *Id.* "Appropriate medical evidence" includes a physician's diagnosis along with documentation that the physician has "reviewed the person's medical history and conducted a physical exam." *Id.* "Conclusory statements by a medical provider that a patient suffers from fibromyalgia are insufficient to meet a claimant's

---

[4] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) *"[e]vidence that other disorders that could cause the symptoms or signs were excluded.* Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.* (emphasis added).

[5] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) *"[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded*[.]" *Id.* (emphasis added). Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id.*

burden at step two for establishing a medically determinable impairment." *Fox v. Comm'r of Soc. Sec.*, No. 1:19-CV-04879, 2020 WL 1888251, at *5 (D.N.J. Apr. 16, 2020).

Once fibromyalgia is determined to be a claimant's medically determinable impairment, an ALJ must then evaluate "the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p. At step two, an ALJ considers whether the fibromyalgia is "severe" and considers "those symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, [an ALJ] will find that the person has a severe impairment(s)." *Id*. Next, fibromyalgia "cannot meet a listing in Appendix 1 because [fibromyalgia] is not a listed impairment. At step 3, therefore, [the ALJ] determine[s] whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id*.

Here, and contrary to Plaintiff's assertions, the ALJ properly considered Plaintiff's fibromyalgia. The ALJ concluded at step two of the sequential evaluation that Plaintiff's fibromyalgia was a severe impairment. R. 21. At step three, the ALJ determined, *inter alia*, that Plaintiff's impairments, including fibromyalgia, or combination of impairments, did not meet or medically equal a listed impairment, reasoning as follows:

> The record fails to establish that the claimant had an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment. The medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment. Furthermore, no treating or examining medical source has mentioned findings or rendered an opinion that the claimant's impairments medically equaled the criteria of any listed

> impairment. . . . In assessing the claimant's diagnosis, the undersigned has also considered SSR 12-2p Evaluation of Fibromyalgia and find that her diagnosis of fibromyalgia is adequately supported by the medical evidence.

*Id*. Although the ALJ's statement specifically discussing fibromyalgia at step three is brief, the ALJ also considered Listings relevant to fibromyalgia at step three, including, as noted above, *inter alia*, Listings 1.02, 1.04, and 11.14. *Id*.; *see also Astacio-Rivera v. Berryhill*, No. CV 16-1276, 2017 WL 2296976, at *8−9 (E.D. Pa. Apr. 12, 2017) (finding that the ALJ properly considered the claimant's fibromyalgia at step three where the ALJ considered that Plaintiff did not meet or equal the criteria of Listings 1.02, 1.04, 11.14, or any Listing under 1.00 or 11.00), *report and recommendation adopted*, No. CV 16-1276, 2017 WL 2277275 (E.D. Pa. May 25, 2017); *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding ALJ's conclusory statement in step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence"). The ALJ also went on at step four to consider Plaintiff's fibromyalgia as well as her complaints of diffuse body pain. R. 25. Although the ALJ found that Plaintiff's impairments, which included fibromyalgia, could reasonably be expected to cause some symptoms as alleged by Plaintiff, the ALJ properly discounted Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effect of the symptoms to the extent that they were inconsistent with the record evidence. R. 24−27.[6]

Plaintiff complains that the ALJ improperly "places significance on the fact that the Plaintiff only underwent conservative care," but points out that she received injections in July 2016 that reduced her pain to "nothing significant" and notes that "surgical intervention was not

---

[6] The Court addresses the ALJ's consideration of Plaintiff's subjective statements later in this decision.

indicated, see document 7-8 at page 2 [R. 438]." *Plaintiff's Brief*, ECF No. 15, p. 5. It is not clear

what Plaintiff intends by this assertion. In any event, the Court notes that the ALJ specifically

considered the fact that Plaintiff underwent injections to address, *inter alia*, her fibromyalgia, R.

25, and courts in this circuit have characterized injections as conservative treatment. *See Sudler*

*v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as

"relatively routine and conservative treatment"); *Jimenez v. Colvin*, No. 15-3762, 2016 WL

2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication,

including trigger point injections, and physical therapy"); *Herman v. Colvin*, No. CIV.A. 12-

6640, 2013 WL 6909915, at *8 (D.N.J. Dec. 31, 2013) ("The ALJ also emphasized the

conservative methods by which Plaintiff was treated. The record evidences treatment of pain

medications, injections, and chiropractic treatment."). Moreover, this was but one factor

considered by the ALJ. R. 21–27.

 Furthermore, the statement that "surgical intervention was not indicated" suggests that

surgical intervention was not warranted given Plaintiff's "normal cervical anatomy" and the

absence of "any significant neural impingement":

> ASSESSMENT AND PLAN: Ms. L[.] is a 44-year-old female with history of
> fibromyalgia who presents with a chronic four year history of neck pain and low
> back pain. She has intermittent episodes of paresthesias, but they do not fit any
> specific nerve root in the lower extremities. She does not have any cervical
> radicular symptoms. On review of her imaging, I explained to Ms. L[.] that *overall*
> *she exhibits normal cervical anatomy and therefore would not benefit from any*
> *surgical intervention* into her cervical spine. In terms of her lumbar spine, while
> she does exhibit early degenerative change in her upper lumbar spine, *I do not*
> *believe that she would benefit from any surgical intervention given that there is no*
> *evidence of any significant neural impingement*.

R. 438 (emphasis added). This evidence does not persuade the Court that the ALJ erred at step

three when considering Plaintiff's fibromyalgia.

Finally, to the extent that Plaintiff complains that the ALJ did not consider her fibromyalgia in combination with "limitations in her emotional state" and orthopedic impairments, *Plaintiff's Brief*, ECF No. 15, p. 5, this Court has already pointed out that the ALJ explicitly stated that he considered Plaintiff's impairments in combination at step three and there is no reason not to believe that statement. *See* R. 21–23; *Granados*, 2014 WL 60054, at *9; *Gainey*, 2011 WL 1560865, at *12.

In short, fairly reading the ALJ's decision as a whole, the Court concludes that the ALJ properly considered Plaintiff's fibromyalgia. *Fullen*, 705 F. App'x at 124; *Jones*, 364 F.3d at 505.

### 2.   Mental Impairments

Finally, Plaintiff appears to challenge the ALJ's step three finding that Plaintiff neither met nor medically equalled Listing 12.06, which, at the time of the ALJ's decision, addressed anxiety and obsessive-compulsive disorders. *Plaintiff's Brief*, ECF No. 15, pp. 2, 5; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 (eff. Mar. 14, 2018 to Apr. 1, 2021). However, Plaintiff, who bears the burden of proof at step three, offers no substantive analysis of the evidence relative to Listing 12.06.[7] *See id*. The Court therefore finds no merit in Plaintiff's

---

[7] Listing 12.06 provides as follows:

12.06 Anxiety and obsessive-compulsive disorders (see 12.00B5), satisfied by A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:
1. Anxiety disorder, characterized by three or more of the following;
a. Restlessness;
b. Easily fatigued;
c. Difficulty concentrating;
d. Irritability;
e. Muscle tension; or
f. Sleep disturbance.

undeveloped argument in this regard. *Cf. Wright v. Comm'r Soc. Sec*., 783 F. App'x 243, 245 (3d

Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted);

*Padgett*, 2018 WL 1399307, at *2.

Accordingly, fairly reading the ALJ's decision as a whole, this Court concludes that

substantial evidence supports the ALJ's step three findings that Plaintiff's mental impairments

---

2. Panic disorder or agoraphobia, characterized by one or both:
a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
3. Obsessive-compulsive disorder, characterized by one or both:
a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
b. Repetitive behaviors aimed at reducing anxiety.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06.

neither meet nor medically equal any listing, including Listings 1.00B(2)(c), 1.04, 12.04, and 12.06 or SSR 12-2p.

### B.     RFC

Plaintiff argues that the ALJ "was incorrect in his determination that the claimant's residual function [sic] capacity allowed her to work." *Plaintiff's Brief*, ECF No. 15, p. 6. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform less than a full range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work. She can lift/carry and push/pull up to 20 pounds occasionally and up to 10 pounds frequently. During an eight-hour workday, she can sit for six hours, stand

for four hours and walk for four hours. The claimant can frequently handle items, finger, and feel with the bilateral upper extremities. She can occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, crouch, and crawl. She can frequently balance, stoop, and kneel. She is limited to performing simple, routine tasks. She is limited to making simple work-related decisions. She can occasionally interact with coworkers and supervisors. She can never interact with the public.

R. 23. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's acknowledged ability to perform some activities of daily living, including driving, managing money, maintaining relationships with some family members and friends, and assisting with housework and cooking as part of a group effort with her husband and children; although progress notes relating to the physical therapy regimen that Plaintiff attended from February to May 2016 indicated gait issues, extremity strength deficits, and cervical/lumbar range of motion loss, the medical record otherwise documents examinations that identify multiple tender points without gait abnormalities, range of motion loss, or neurological deficits; an EMG/NCV study in April 2016 that provided evidence of mild right carpal tunnel syndrome and moderate left carpal tunnel syndrome, but testing did not indicate cervical or lumbar radiculopathy; some evidence in the record failed to document extremity sensation deficits, hand/finger dexterity issues, and grip strength loss; although diagnostic imaging performed in April 2013, October 2015, and May 2018 indicated multilevel lumbar herniations with cord compression and facet hypertrophy, an April 2014 MRI indicated a cervical disc bulge without nerve root involvement or stenosis; a November 2014 left shoulder MRI revealed only minimal left shoulder degenerative disease and July 2016 hip x-rays revealed only trace/minimal degenerative joint disease; Plaintiff received only conservative treatment—such as medication, physical therapy, and injections—to address musculoskeletal pain, fibromyalgia, and restless leg syndrome; although Plaintiff complained of migraines, for which she was prescribed medication, progress notes do not document that this condition occurred with the frequency or severity that

she described at the hearing and she did not seek ongoing specialist care to address headaches; the ALJ assigned greater weight to the opinions of the State agency reviewing physicians, who opined that Plaintiff was able to perform light physical exertion involving four hours of standing/walking and occasional climbing, crouching, and crawling, as well as frequent balancing, stooping, and kneeling, than to those of treating sources, including Glenn Babus, M.D., Harleen Kaur, M.D., Maryann Lee, M.D., and D. Kunstadt, M.D., who opined that Plaintiff was not disabled during certain periods of time; evidence that, although Plaintiff sought medication management and therapy for her psychiatric impairments, she did not seek related emergency care or require hospitalization during the period at issue; mental status examinations documented in progress notes were largely unremarkable for behavioral or cognitive abnormalities beyond an anxious/depressed mood with constricted affect; evidence that, during a February 2016 consultative examination performed by J. Theodore Brown Jr., Ph.D., Plaintiff exhibited normal behavior, appearance, speech, and thought processes with average cognitive functioning. R. 24–26. The ALJ went on to explain his RFC findings as follows:

> Limiting the claimant to light physical exertion involving only four hours of standing/walking and the above-described postural activities is supported by the claimant's ongoing complaints of diffuse body pain, as well as the gait abnormalities noted in some examinations of record. Additionally, her bilateral carpal tunnel syndrome and complaints of extremity numbness/tingling support a restriction to frequent handling, fingering, and feeling with the upper extremities.

> Nevertheless, further restrictions based on the claimant's physical impairments are not warranted. Examinations of record did not generally indicate neurological deficits or dexterity issues and the claimant did not require the use of an assistive device to ambulate.

> Although the claimant complained of chronic migraines and the need to lie down during the day, there is no support for the inclusion of off-task time in the residual functional capacity assessment given the claimant's limited treatment and the lack of documentation as to the severity/frequency of her headaches. Despite the claimant's complaints of fatigue, her treatment was limited to conservative measures that did not include emergency care or hospitalization. The claimant

acknowledged the ability to engage in some housework with assistance, drive, and manage money. . . .

To address the claimant's complaints of cognitive deficits, the undersigned finds that she is limited to performing simple, routine tasks that require no more than simple work-related decisions. Furthermore, given her reports of social withdrawal and difficulty interacting with others, she is restricted from interaction with the public and more than occasional interaction with coworkers/supervisors.

Nevertheless, the record does not support further work-related mental restrictions. The claimant's treatment was limited and conservative in nature. Furthermore, mental status examinations of record were generally unremarkable for cognitive or behavioral abnormalities beyond constricted affect.

R. 25–26.

In sum, the above residual functional capacity assessment is supported by the medical evidence, the claimant's acknowledged ability to engage in a variety of activities of daily living, her response to treatment, the level of care she has sought and received, and credible aspects of the medical opinions. No further limitations are warranted.

R. 27. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination, pointing to her hearing testimony and subjective complaints that she believes support greater restrictions than those found by the ALJ. *Plaintiff's Brief*, ECF No. 15, p. 6. Plaintiff's argument is not well taken. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an

29

underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an

ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[8]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 23–26. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms, but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 24 As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings, including, *inter alia*, that progress notes do not reflect migraines of the frequency or severity that Plaintiff described and that she did not seek specialist care to address these headaches, and that mental status examinations were largely unremarkable. R. 24–26. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

---

[8]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

C.      **Step Five**

Finally, although captioned under the heading "Residual Function [sic] Capacity

Evaluation[,]" Plaintiff apparently challenges the ALJ's step five determination, arguing that the

hypothetical question posed to the vocational expert, which included the ALJ's RFC

determination, was "incomplete" because it failed to include all of Plaintiff's claimed limitations.

*Plaintiff's Brief*, ECF No. 15, p. 6. Plaintiff's argument is not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). It is the Commissioner who bears the burden of

proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v.*

*Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford*, 399 F.3d at 551 ).

"'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of

determining whether other jobs exist in significant numbers in the national economy that the

claimant could perform] . . . and factors to be considered include medical impairments, age,

education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551).

"Testimony of vocational experts in disability determination proceedings typically includes, and

often centers upon, one or more hypothetical questions posed by the ALJ to the vocational

expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask

whether a hypothetical claimant with the same physical and mental impairments as the claimant

can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607,

614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately

convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do

not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'"

*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at

554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly

established limitations'" in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399

F.3d at 554). Credibly established limitations are limitations "that are medically supported and

otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are

medically supported but are also contradicted by other evidence in the record may or may not be

found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject

evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks

omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative

employment may only be considered for purposes of determining disability if the [ALJ's

hypothetical] question accurately portrays the claimant's individual physical and mental"

limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must

reflect all of a claimant's impairments that are supported by the record; otherwise the question is

deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v.

Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

　　　　Here, the hypothetical question posed by the ALJ to the vocational expert assumed a

claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 23, 69–70. The

vocational expert responded that the jobs of data entry clerical assistant and photocopy machine

operator could be performed by such an individual. R. 70. For the reasons discussed earlier in

this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations

and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554;

*Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical

questions is that all her alleged impairments were not addressed, this criticism boils down to an

attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 8, 2021                         _____*s/Norah McCann King*_____
                                                       NORAH McCANN KING
                                                       UNITED STATES MAGISTRATE JUDGE